**RECORD NO. 13-1051**

*In the*

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**ALVERA LEWIS**

*Plaintiff-Appellant,*

**V.**

**UNIVERSITY OF MARYLAND, BALTIMORE**

*Defendants-Appellees.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND NORTHERN DIVISION**

## REPLY BRIEF OF APPELLANT

**John B. Stolarz**
**The Stolarz Law Firm**
**6509 York Road**
**Baltimore, MD 21212**
**(410) 532-7200**
**stolarz@verizon.net**

***Counsel for Appellant***

**Table of Contents**

I. Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Interpretation of Maryland State Gov't Art., § 20-601, Et Seq. Should Not Be Left to the Federal Courts Because the Federal Courts Cannot Be Relied on to Interpret Maryland Disability Law in the manner directed by Maryland's Highest Court in *Meade v. Shangri-La Partnership*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. Automatically Terminating the Plaintiff at the End of Her FMLA Leave, Without Any Communication With Her, Was a Clear Violation of the ADA.. . . . . . . . . . . . . . . . . . . . . . . . 5

IV. Defendant Has Failed to Present Any Evidence That Providing the Plaintiff with Additional Leave After FMLA Expired, Was an Undue Hardship on the Employer.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

V. Defendant's Contention That the Plaintiff Failed to Show She Could Perform Her Job at the Time of Her Termination Misdirects the Court Away from the Primary Issue of Whether the Employer Met it's Obligations to Address the Plaintiff's need for an Accommodation.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

VI. Defendant's Contention That Coming to the Office Was an Essential Function of Her Position is Contradicted by the Fact That She Had Worked at Home Earlier That Year, and the Only Reason That She Was Not Permitted to do so Was Because She Was a Contract Hourly Employee. . . . . . . . . . . . . . . . . . . . . . 8

VII. Defendant Should Not Be Allowed to Ignore the Fact That it Was Clearly Aware That the Plaintiff Intended to Return to Her Position After She Recuperated From Her Surgery. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

VII. Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Table of Authorities**

Cases

Cehrs v. Northeast Ohio Alzheimer's Research Ctr., 155 F3d 775 (6th Cir.1998). . . . . . . . . . . . . . . . 10

Coleman v. Court of Appeals 132 S.Ct. 1327 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fields v Verizon Services Corporation, No. 11-2093 (D. Md. 8/9 2012). . . . . . . . . . . . . . . . . . . . . . . 4

Fields v. Verizon Services Corporation, 8:10-cv-02484 (D. Md., 9/13/2011).. . . . . . . . . . . . . . . . . . . 3

Haas v. Lockhead Martin 396 MD. 469, 914 A.2d 735 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12

Hoffman v. Carefirst of Fort Wayne, Inc., 737 F. Supp. 2d 976 (N.D. Ind.,2010). . . . . . . . . . . . . 2, 4

Kohli v. LOOC, Inc., 654 A.2d 922, 103 Md.App. 694 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Meade v. Shangri-La Partnership, 424 Md 476, 36 A.3d 483 (2012). . . . . . . . . . . . . . . . . . . . . . 1, 3, 12

Moore v Maryland Dep't of Pub Safety & Corr. Services,
Civil No. CCG-11-553, (D. Md. 9/12/ 2011 ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Norton v. Assisted Living Concepts, Inc. No. 4:10-cv- 00091, 2011
WL 1832952 (E.D. Tex. May 13, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

US Airways, Inc. v. Barnett, 535 U.S. 391, 122 S. Ct. 1516 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Statutes**

Federal

42 U.S.C. §a 12101 (ADA). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2 ,3, 5 ,6, 11

42 U.S.C. §a 12111(9)(B)(1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

42 U.S.C. §a 12112(b)(5)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ADAAA Amendments Act of 2008 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 12

29 U.S.C. § 2601 (FMLA). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 10, 11

Pub. L. No 110-325, 112 Stat. 3554. . . . . 2

Senate Bill 3406. . . . . 2

Maryland

State Gov't Art., § 20-601, *et seq.*("SG"). . . . . 1, 5

Local Statutes

Montgomery County Code (MCC) § 27-1. . . . . 3, 4

Regulations

29 C.F.R. § 1630.2(o)(2)(ii)(1997). . . . . 6

COMAR § 14.03.02.05.. . . . . 6

Treatises & Other Publications

EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act. . . . . 5, 10

EEOC Policy Guidance on Executive Order 13164. . . . . 9

154 Cong. Rec. E1841-03 (Sept 17, 2008). . . . . 2

154 Cong. Rec. S7908-01 at 213-214 (Sept. 17, 2008). . . . . 1

## I. Introduction.[1]

The lower court, and Defendant's response utilize federal case law to interpret Maryland State Gov't Art., § 20-601, *et seq*. ("SG") in the conviction that the Maryland statute and the Americans With Disabilities Act (ADA)[2] are linked in interpretation. Defendant avoids any real discussion of the how the Amendments Act of 2008 (ADAAA) and *Meade v. Shangri-La Partnership*,[3] which incorporated the ADAAA into Maryland case law, affects this case.

The Congressional bill which enacted the ADAAA has a broad construction provision which specifically instructs the courts and the agencies that the definition of disability is to be interpreted broadly, to the maximum extent permitted by the ADA.[4] In *Meade*, Maryland's highest court reviewed the ADAAA, and the reasons for its passage, and concluded that it was in line with the remedial nature of Maryland disability law.

In any large employer organization, and such as in this case, the Human

---

[1] The employer discharged the employee because she failed to return to work at the end of her FMLA leave, even though the employer, because it is a Maryland state entity, is not required to provide FMLA (29 U.S.C. § 2601) leave. The U.S. Supreme Court case of *Coleman v. Court of Appeals*, 132 S.Ct. 1327 (2012), which made this determination, was adjudicated after the Plaintiff was terminated.

[2] 42 U.S.C. § 12101

[3] 424 Md 476, 36 A.3d 483 (2012).

[4] 154 Cong. Rec. S7908-01 at 213-214.

Resources Department is trained in, and is very familiar with the rules as they pertain to accommodating a disability.[5] The average employee, on the other hand, generally only comes into contact with the rules for obtaining an accommodating her disability, when the necessity for this becomes evident. And, even then, the knowledge acquired does not encompass all issues pertaining to the statute. Generally, as here, the employee relies on the employer for guidance.

When the bill was introduced in the House of Representatives for vote, Representative George Miller expressed his thoughts on Senate Bill 3406, stating that the bill restored the proper focus on whether discrimination occurred rather than on whether or not an individual's impairment qualifies as a disability, and that Congress intended that the ADA Amendments Act will reduce the depth of analysis related to the severity of the limitation of the impairment and return the focus to where it should be: the question of whether or not discrimination, based upon the disability, actually occurred.[6]

---

[5] Ms. Butler communicated with Claude Owens, Defendant's Human Resource Services Representative , JA 277, and concluded that they were not obligated to accommodate Ms. Lewis. JA 399

[6] 154 Cong. Rec. E1841-03 (Sept. 17, 2008). See also, *Hoffman v. Carefirst of Fort Wayne, Inc.*, 737 F. Supp. 2d 976, 985 (N.D. Ind., 2010) ("it is the intent of Congress that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations," quoting directly from Pub. L. No. 110-325, 112 Stat. 3554).

## II. Interpretation of Maryland State Gov't Art., § 20-601, Et Seq. Should Not Be Left to the Federal Courts Because the Federal Courts Cannot Be Relied on to Interpret Maryland Disability Law in the manner directed by Maryland's Highest Court in *Meade v. Shangri-La Partnership*.

The lower court in this case refused to focus its inquiry on the actions of the employer, the entity charged with superior knowledge of the disability and FMLA laws, but rather examined, minutely, the missteps of the employee in trying to recuperate and return to full employment. As demonstrated in the Opening Brief, and this Reply, the lower court's action failed to comply with the ADAAA's directive to focus on the employer.

That this is not an isolated instance is the demonstrated in the Maryland U.S. District Court case of *Maryland Fields v. Verizon Servs. Corp.* (D. Md., 2011) where declined to recognize cancer, in remission, as a disability under the Montgomery County Code (MCC), because the Maryland Court has not specifically recognized it as a disability. This, in spite of the fact that other federal courts have recognized it:

> "While Maryland courts generally look to federal decisions interpreting the ADA when called upon to interpret the MCC, the MCC provides that "the prohibitions in this article are substantially similar, but not necessarily identical, to prohibitions in federal and state law." See MCC § 27-1. **No court interpreting the MCC has yet found that the amendments to the definition of "disability" under the ADA have been adopted as part of the MCC's definition of "disability**." Moreover, the MCC's statutory definition of "disability" does not mention impairments that are "episodic or in remission" as being included in its definition of "disability." Thus, the Court declines to extend the interpretation of the ADA amendments adopted by the

*Hoffman*[7] and *Norton*[8] courts to apply to the MCC here. Accordingly, the Court finds that Fields was not an individual with a disability as defined by the MCC at the time her employment was terminated in November 2009.[9] (Emphasis added).[10]

Granted that this case was based upon a pre-ADAAA fact pattern, but the U.S. District Court has demonstrated a continued failure to ignore Maryland policy set out the Maryland Court of Appeals in *Haas v. Lockheed Martin*,[11] and its progeny, that

---

[7] *Hoffman v. Carefirst of Fort Wayne, Inc.*, 737 F. Supp. 2d 976

[8] *Norton v. Assisted Living Concepts, Inc.*, No. 4:10-cv-00091, 2011 WL 1832952, at *7 (E.D. Tex. May 13, 2011).

[9] " While Maryland courts generally look to federal decisions interpreting the ADA when called upon to interpret the MCC, the MCC provides that "the prohibitions in this article are substantially similar, but not necessarily identical, to prohibitions in federal and state law." See MCC § 27-1. No court interpreting the MCC has yet found that the amendments to the definition of "disability" under the ADA have been adopted as part of the MCC's definition of "disability." Moreover, the MCC's statutory definition of "disability" does not mention impairments that are "episodic or in remission" as being included in its definition of "disability." Thus, the Court declines to extend the interpretation of the ADA amendments adopted by the Hoffman and Norton courts to apply to the MCC here. Accordingly, the Court finds that Fields was not an individual with a disability as defined by the MCC at the time her employment was terminated in November 2009."

[10] Summary judgment was upheld by the Court of Appeals for the Fourth Circuit in an unpublished opinion, without reaching the disability issue. *Fields, v. Verizon Services Corporation*, No. 11-2093, decided: August 9, 2012.

[11] 396 Md. 469, 914 A.2d 735, 750-751 (2007).

Maryland discrimination statutes were meant to be liberally interpreted. See, Opg. Brief, IV.C.

For the foregoing, and the following reasons, Plaintiff requests that the Court reverse the decision of the lower court and remand this case to the Circuit Court for Baltimore City.

### III. Automatically Terminating the Plaintiff at the End of Her FMLA Leave, Without Any Communication With Her, Was a Clear Violation of the SG 20-601, Et Seq.

Defendant contends that it was justified in terminating § XIX.A. of the University' USM Bylaws, Policies and Procedures of the Board of Regents JA 327. automatically converted Plaintiff's absence to a voluntary resignation. (Dft. Mem., 25).[12]

This automatic termination of an employee with a qualified disability would be clear a violation of the ADA. EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, ¶ 16. states that if an employee with a disability needs additional unpaid leave as a reasonable accommodation, the employer must modify its "no-fault" leave policy to provide the employee with the additional leave, unless it can show that: (1) there is

[12] This section state that the "CEO or its designee may request certification of the reasons for the employee's failure to return to work. Defendant does not state why no one contacted the Plaintiff before issuing the termination letter.

another effective accommodation that would enable the person to perform the essential functions of his/her position, or (2) granting additional leave would cause an undue hardship. Modifying workplace policies, including leave policies, is a form of reasonable accommodation. COMAR 14.03.02.05; 42 U.S.C. § 12111(9)(B) (1994); 29 C.F.R. § 1630.2(o)(2)(ii) (1997). See also, *US Airways, Inc. v. Barnett*, 535 U.S. 391, 122 S. Ct. 1516, 1521 (2002).

There is no Maryland authority on this issue, and for that reason, this action should be remanded to the Circuit Court for Baltimore City, for further proceedings.

## IV. Defendant Has Failed to Present Any Evidence That Providing the Plaintiff with Additional Leave after FMLA Expired, Was an Undue Hardship on the Employer.

The Plaintiffs have made a prima facie showing that additional leave was, on its face, a reasonable accommodation.

The burden then, placed upon the Defendant by Maryland and federal case law,[13] and the ADA statute,[14] is to demonstrate that granting additional leave was an undue hardship.

Defendant has not produced any evidence that granting the Plaintiff additional

---

[13] *Kohli v. LOOC, Inc.*, 654 A.2d 922, 103 Md.App. 694 701 (1994); *US Airways, Inc. v. Barnett*, 535 U.S. 391, 122 S. Ct. 1516, 1521 (2002);

[14] 42 U.S.C. §a12112(b)(5)(A).

leave, after her FMLA leave expired, was an undue hardship.

## V. Defendant's Contention That the Plaintiff Failed to Show She Could Perform Her Job at the Time of Her Termination Misdirects the Court Away from the Primary Issue of Whether the Employer Met its Obligations to Address the Plaintiff's Need for an Accommodation.

Defendant's contention that the Plaintiff must show that she could have performed her job at the time of her discharge misleads the court away from the issue of the propriety of the employer's response to Plaintiff's need for additional leave to recuperate from her disability.

Defendant contends that the Plaintiff should have specifically requested additional leave, while the Plaintiff was under the impression that Defendant had no desire to accommodate her disability because her supervisor failed to respond to Plaintiff's husband's email of June 2, 2010.

Any argument by the Defendant that it was justified in discharging the Plaintiff because it was uncertain when she would return to work is inane and defies reality.

Defendant should have engaged her to determine whether there was a need for an accommodation because it is clear that the Plaintiff intended to return to work when her doctor released her from work. The Plaintiff's husband sent the June 2, 2010 email to begin the discussion of obtaining an accommodation for Plaintiff's disability. JA 527. This email clearly contemplated that the Plaintiff would be returning

to work.

Having no response from Ms. Butler to the June 2, 2010 email, the Plaintiff submitted, later that day a note stating that she was restricted from working and would be evaluated in 6 weeks. JA 307.

The Plaintiff contends that she could have worked from home, or come to work with the aid of a wheelchair, while she recuperated. Defendant has mustered no facts that the Plaintiff's knee operation would ever prevent her from returning to her job at the end of her recuperation. In fact, Defendant's own personnel expected the Plaintiff to return to her job. It was only a question of when.

The Plaintiff was, in fact, evaluated on July 28, 2010, six weeks and one day after June 2, and released to return to work, with a restriction on prolonged walking and standing more than 30 minutes, on the same day. JA 348

## VI. Defendant's Contention That Coming to the Office Was an Essential Function of Her Position Is Contradicted by the Fact That She Had Worked at Home Earlier That Year, and the Only Reason That She Was Not Permitted to Do So Was Because She Was a Contract Hourly Employee.

Defendant contends that it was undisputed that the University had determined that attendance was an essential function to Plaintiff's position. (Dft. Mem. P. 20). This contention is without merit. Beyond the opinions of supervisors Defendant has not offered any written employer job position statements which set out this

requirement. The essential functions of a job are those job duties that are so fundamental to the position that the individual cannot do the job without being able to perform them. A function can be "essential" if, among other things, the position exists specifically to perform that function, there are a limited number of other employees who could perform the function if it were assigned to them, or the function is specialized and the incumbent is hired based on his/her ability to perform it.[15]

In contrast, the Plaintiff, testified that when Plaintiff's physicians recommended that she stay off from work after the January 7, 2010 collision until February 4, 2010, Plaintiff's supervisor, Delores Butler, permitted the Plaintiff to work from home from January 8, 2010, through January 25, 2010. JA 393, ¶ 7. Plaintiff's supervisor, Delores Butler provided the computer link up to access emails, retrieve messages from the office phone, respond to requests on behalf of Dr. Haskall, make appointments, prepare the department for multiple interviews for visiting people, prepare and submit the Vascular Interventional Radiology on-call and work rotation schedule, and prepare interviews for Dr. Haskall, and Penny Olivi, Department of Radiology Administrator. JA 393, ¶ 7.

Defendant is reaching for straws on this issue. The only criteria that the

---

[15] The U.S. Equal Employment Opportunity Commission Policy Guidance On Executive Order 13164: Establishing Procedures To Facilitate The Provision Of Reasonable Accommodation, I.A. Essential Functions.

Defendant apparently has for determining who gets to work from home is whether the employee is exempt or non-exempt.[16] Exempt employees, are defined by the Defendant as non-hourly employees. JA. 273-4. Exempt employees work from home, Non-exempt employee do not work from home. JA 273.

The reason, therefore, that the Plaintiff was not allowed to work from home is because she was an hourly, or non-exempt employee, JA 270 not because Plaintiff was required to be present in the office while she recuperated.

## VII. Defendant Should Have Granted the Plaintiff Additional Leave to Recuperate from Her Surgery Because it Was Clearly Aware That Plaintiff Intended to Return to Work after Her Recuperating from the Surgery.[17]

Defendant contends that Plaintiff did not request additional leave after she was advised that he FMLA and, in any event, that it was not required to hold her position indefinitely.

EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, ¶ 16.,[18] provides that an

---

[16] Exempt employees work from home, while non-exempt employees do not work from home. JA 273.

[17] *Moore v. Maryland Dep't of Pub. Safety & Corr. Services*, Civil No. CCB-11-553, Filed September 12, 2011, (D. Md.), citing *Cehrs v. Northeast Ohio Alzheimer's Research Ctr.,* 155 F.3d 775, 783 (6th Cir.1998). See also, Opg. Brief, VI.G.2.

[18] **Leave**.

employer should allow an employee with a disability to exhaust accrued paid leave first and then provide unpaid leave. An employer should determine an employee's rights under the FMLA and the ADA te separately, and then consider whether the two statutes overlap regarding the appropriate actions to take. EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, ¶ 21.

---

> Permitting the use of accrued paid leave, or unpaid leave, is a form of reasonable accommodation when necessitated by an employee's disability. An employer does not have to provide paid leave beyond that which is provided to similarly-situated employees. Employers should allow an employee with a disability to exhaust accrued paid leave first and then provide unpaid leave. For example, if employees get 10 days of paid leave, and an employee with a disability needs 15 days of leave, the employer should allow the individual to use 10 days of paid leave and 5 days of unpaid leave.

An employee with a disability may need leave for a number of reasons related to the disability, including, but not limited to:

> obtaining medical treatment (e.g., surgery, psychotherapy, substance abuse treatment, or dialysis); rehabilitation services; or physical or occupational therapy;
> recuperating from an illness or an episodic manifestation of the disability;
> obtaining repairs on a wheelchair, accessible van, or prosthetic device;
> avoiding temporary adverse conditions in the work environment (for example, an air-conditioning breakdown causing unusually warm temperatures that could seriously harm an employee with multiple sclerosis);
> training a service animal (e.g., a guide dog); or
> receiving training in the use of braille or to learn sign language.

**VII. Conclusion.**

This case, based on a Maryland disability statute, contains a number of issues that have not been addressed by Maryland's highest court. Even issues that have been decided by the federal courts, need to be examined after the passage of the ADAAA.

Allowing the federal court to make blind stabs at what a Maryland court would do, is a disservice to the Plaintiff, who has a right to demand that her case be judged by the remedial standards set out by Maryland's highest court in *Haas v. Lockheed Martin* and *Meade v. Shangri-La Partnership.*

The lower court in this case focused on the actions of the employee when, especially after the ADAAA, the focus should have been on the actions of the Defendant employer in response to Plaintiff's obvious need for an accommodation.

For the foregoing reasons, Plaintiff requests that the Court reverse the summary judgment and enter judgment in favor of the Plaintiff or, in the alternative, reverse the judgment of the District Court and direct the lower court to enter an order remanding this action for trial to the Circuit Court for Baltimore City, and award such other relief, as may be reasonable and appropriate.

/s/ ______________________

John B. Stolarz
The Stolarz Law Firm
6509 York Road
Baltimore, MD 21212
(410) 532-7200
(410) 372-0529 (fax)
stolarz@verizon.net

Attorney for Plaintiff-Appellant

W:\4892\Appeal-Reply Brief\reply.wpd

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**No.** 13-1051 **Caption:** Alvera E. Lewis v. University of Maryland, Baltimore

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)

Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   ☑ this brief contains 2981 [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   ☐ this brief uses a monospaced typeface and contains ____________ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   ☑ this brief has been prepared in a proportionally spaced typeface using Garamond, 14 pt. [*identify word processing program*] in ____________ [*identify font size and type style*]; **or**

   ☐ this brief has been prepared in a monospaced typeface using ____________ [*identify word processing program*] in ____________ [*identify font size and type style*].

(s) ____________

Attorney for Plaintiff

Dated: 5/31/13

**CERTIFICATE OF SERVICE**

I certify that on May 31, 2013, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

/s/

John B. Stolarz

Attorney for Plaintiff-Appellant